### SALYER *v.* THE STATE on the relation of TYNER.

An administrator, in 1847, made a final settlement of an intestate's estate, in the Probate Court. In 1850, the Court, on a bill filed by certain creditors of the intestate to open up the settlement on the ground of waste, &c., found that there was then in the hands of the administrator, not paid, nor in any way accounted for, 1,732 dollars; and made a decree that the settlement should be opened up, and that the complainants should recover of the administrator, as such, said sum and costs, &c. On this decree an execution was duly issued and returned *nulla bona.* In a suit by said creditors upon the bond of the administrator,

*Held,* that the surety was estopped from controverting the validity of the decree which ascertained the amount to be paid to the plaintiffs.

*Held,* also, that the decree was a sufficient conviction of waste.

The bond given by an administrator, under the R. S. 1831, on receiving his letters, rendered the obligors responsible for the proper application by the administrator of the assets derived from the sale of real estate.

On an application by an administrator to sell real estate, it was in the discretion of the Court, under the R. S. 1831, to require from the administrator an additional bond or not.

A suit could not be maintained upon the additional bond given by an administrator under the R. S. 1831, on an application to sell real estate, until the penalty of his original bond had been exhausted.

Where the record does not profess to set out all the evidence given at the trial, the Supreme Court will presume that there was sufficient to sustain the judgment.

*Monday,
June 5.*

ERROR to the *Fayette* Circuit Court.

DAVISON, J.—Debt by the state on the relation of *Richard Tyner* and others, against *Robert N. Taylor*, an administrator, and *Charles Salyer*, his security. The declaration is upon a bond in the penalty of 10,000 dollars, conditioned that *Taylor* would truly and faithfully perform the duties and trusts committed to him as administrator of the personal estate of *Isaac F. Riggs*, deceased. The breaches assigned are—

1. That the administrator did not, nor would, faithfully discharge the duties and trusts committed to him, but on the contrary thereof, afterwards, to-wit, on the first of January, 1848, at, &c., wasted and converted the personal estate of the decedent, of the value of 5,000 dollars, to his own use. That the relators are creditors of said estate, and hold valid claims against it, to the amount of 5,000 dollars, which are unpaid, &c.

2. That Taylor, as administrator, at the February term, 1847, made a pretended settlement of said estate, in the Probate Court of Fayette county. That afterwards Richard Tyner and others, the present relators, filed their bill to open up that settlement on the ground of waste, &c. And upon said bill, the Probate Court, at the February term, 1850, found that there was then in the hands of said administrator, not paid nor in any way whatever accounted for, 1,732 dollars. Whereupon a decree passed that said settlement be opened up, and that the said Richard Tyner and others recover of Taylor, as such administrator, 1,732 dollars, with their cost, &c. Upon this decree a writ of execution was duly issued and returned nulla bona.

As to Taylor, there was a return of " not found." Salyer appeared and pleaded four pleas:

1. That the Probate Court, in July, 1841, ordered the estate of Riggs to be marshalled, the assets belonging alone to that estate to be applied to his individual debts, and the assets which belonged to a firm of which Riggs, in his lifetime, was a member, were directed to be applied to partnership liabilities. That Taylor, as administrator of the decedent's individual estate, had faithfully discharged the duties and trusts committed to him, and fully accounted for and paid over all moneys, &c. That the claim specified in the declaration was a demand against said individual estate. And that there were still partnership demands against the assets in his hands, unpaid, and of an amount larger than that sued for in this action, &c.

2. That in August, 1838, the Probate Court, upon the application of the administrator, ordered the real estate whereof Riggs died seized, to be sold and made assets, &c.

Thereupon *Taylor*, with one *Benjamin Ross* and one *Samuel Ross*, executed a bond to the state, in the penalty of 1,000 dollars, conditioned that he would faithfully account for all moneys that might come into his hands upon the sale of such estate, and properly apply the same in settlement, &c. That *Taylor*, pursuant to said order, sold the real estate of the deceased, and received from the sale thereof 1,232 dollars, which he loaned to divers individuals, and received interest thereon to the amount of 800 dollars. For these sums *Taylor* never accounted to the Court, but converted the same to his own use; on account whereof, and *Taylor's* failure therein, the said Court rendered the decree in the declaration specified, &c.

3. That there is no such decree and recovery remaining of record in the Probate Court, in manner and form, &c.

4. That as such administrator *Taylor* hath fully administered and accounted for all the assets, &c., of the individual estate of *Riggs*, that ever came to his hands to be administered, &c.

Demurrers were sustained to the first, second and fourth pleas. To the third, the plaintiff filed her replication, which led to an issue. That issue the Circuit Court tried, and found for the plaintiff. Judgment upon the finding of the Court.

The demurrer to the first and fourth pleas raises the inquiry, whether the decree upon which the plaintiff relied for a recovery in this suit, was conclusive against the defendant. If it was, then the demurrer to these pleas was correctly sustained, because each of them sets up matter tending to impeach the decree. It has been decided that a judgment against an administrator, if obtained without fraud, is conclusive against his sureties in an administration bond, as to the merits of the original action. *Heard* v. *Lodge*, 20 Pick. 53. We think that in the present case the surety is estopped from controverting the validity of the decree ascertaining the amount of debt to be paid by the administrator.

But it is insisted that in addition to the allegation of a judgment, writ of execution, and return of *nulla bona*, the

declaration should have contained a formal averment of a devastavit. The declaration shows, that upon a bill charging the administrator with having made a pretended final settlement, and with having committed waste, the Probate Court opened up his settlement and found in his hands, unaccounted for, assets belonging to the decedent's estate, to the amount of 1,732 dollars. This, in our opinion, was a sufficient conviction of what the statute denominates waste. R. S. 1843, p. 559. The defendant can not be permitted to controvert a devastavit thus established against the administrator. 1 Blackf. 344.—2 *id.* 26. A formal averment of waste was not requisite to sustain this action. Williams on Executors, 1697.

May Term, 1854.

SALYER
v.
THE STATE.

The next inquiry is as to the validity of the second plea. It alleges that the decree set forth in the declaration was predicated upon a waste and embezzlement of assets derived from the sale of real property, to secure the faithful administration of which *Taylor* had executed a second bond. Therefore it is contended that the present suit, being on his original bond, can not be supported. The bond in suit, and also the one referred to in the plea, were given under an act approved *February* 10, 1831, entitled "an act to organize Probate Courts," &c. 8th section of that act, it is provided that the person to whom letters of administration may be granted, shall, before the delivery thereof, execute a bond to the state, with freehold security, in double the estimated value of the estate to be administered, conditioned for the faithful performance of the duties and trusts committed to him as such administrator, according to law. Under the 19th section of the same statute, it was made the duty of the administrator, when he discovered that the personal property was insufficient to pay the debts outstanding, &c., to take an inventory of the real estate of the intestate, and cause the same to be appraised. And upon suggestion of the administrator, it became the duty of the Court to order a sale of such property, and make the same assets in his hands under the provisions of said act; the administrator, previous to such order, filing with the clerk of said Court

"such further or additional bond as the Court may require." R. S. 1831, pp. 156, 161.

It is insisted that the first bond was given without reference to the real estate. That position is not strictly correct. The law makes it the administrator's duty, when he discovers the insufficiency of the personal assets to discharge the intestate's debts, to take an inventory of the real property and cause it to be appraised. No doubt that duty is within the condition of the original bond. Indeed it requires fidelity in the performance of every duty and trust committed to the administrator. It would therefore be difficult to find a reason why the condition of the first bond should not embrace the distribution of assets derived from the sale of land. The words " such other and additional bond as the Court may require," as used in the statute, evidently conferred on the Court a discretionary power. Where, in the opinion of the Court, the administration bond was sufficient to secure a proper application of all the assets belonging to the estate, including those to be produced by the sale of real property, further security would not be required. The condition of the bond sued on in this case, was clearly intended to secure to all interested in the estate of *Riggs* the performance of every duty enjoined upon the administrator.

*Wade* v. *Graham*, 4 Ohio 126, is directly in point. In that case it was decided under a statute similar to the one above cited, that the sureties on an administration bond are liable to the amount of the penalty, at least, for proceeds received by the administrator from the sale of lands under an order of the Court.

It seems to us, that under the statute of 1831, no suit could be maintained upon the additional bond until the penalty of the original bond was exhausted. The statute of 1843, and also the law now in force, relative to the sale of real estate by an administrator, differ in phraseology from the act under consideration, and may admit of a different construction. But we are not called upon to give an opinion as to the effect of administration bonds given under these later statutes.

The decision upon the issue submitted, it is alleged, was unsustained by the proofs in the cause. The record does not profess to set out all the evidence given on the trial. And we will therefore presume that there was sufficient evidence before the Court to support the judgment.

*Per Curiam.*—The judgment is affirmed, with 3 per cent. damages and costs.

*J. A. Fay* and *J. Perry*, for the plaintiff.

*G. Holland*, for the state.